UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEPHAN ROSS,                                        :

        Petitioner,   :   09 Civ. 5737 (PKC) (DF)

  -against-        :   **REPORT AND**
                **RECOMMENDATION**
WILLIAM BROWN      :
Superintendent of Eastern NY
Correctional Facility      :

        Respondent.  :
------------------------------------------------------------X

**TO THE HONORABLE P. KEVIN CASTEL:**

  *Pro se* petitioner Stephan Ross ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of Robbery in the First Degree, in violation of N.Y. Penal Law § 160.15(4), and Assault in the Second Degree, in violation of N.Y. Penal Law § 120.05(4). (Amended Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated Aug. 14, 2009 (Dkt. 5) ("Amended Petition" or "Am. Pet."), at ¶ 5.) At the time Petitioner filed his Petition, he was incarcerated at Eastern Correctional Facility in Napanoch, New York. (Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated Feb. 27, 2009 (Dkt. 2) ("Petition" or "Pet.").)[1]

---

[1] According to the New York State Department of Correctional Services, Petitioner is currently incarcerated at the Woodbourne Correctional Facility in Woodbourne, New York. (*See* New York State Department Of Correctional Services, Inmate Population Information Search, http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (Search Last Name "Ross"; First Name "Stephan"; DIN "03A6087").)

Petitioner claims that:  (1) Petitioner's 12-year prison sentence was excessive (a) in light of mitigating factors, and (b) as compared to his accomplices; and (2) Petitioner's conviction for robbery in the first degree should be vacated or, in the alternative, reduced to robbery in the second degree as (a) his guilty plea to first-degree robbery was not knowing and voluntary because, prior to accepting his plea, the state court failed to notify him that possession of an unloaded handgun could be a defense to first-degree robbery, or to inquire as to whether the gun used during the robbery was loaded and operable, and (b) the gun used during the robbery was inoperable.  (*See* Am. Pet.)  Respondent William D. Brown ("Respondent"), the Superintendent of Eastern Correctional Facility, argues that Petitioner's claims should be dismissed as not cognizable, waived and/or without merit.  (*See* Respondent's Memorandum of Law in Opposition to the Amended Petition for a Writ of Habeas Corpus, dated Apr. 19, 2010 (Dkt. 12) ("Resp. Mem."); Declaration of Lisa Fleishmann in Opposition to the Petition For a Writ of Habeas Corpus, dated Apr. 19, 2010 (Dkt. 13).)[2]

For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

## FACTUAL BACKGROUND[3]

On November 3, 2002, Petitioner was driving a car in Manhattan, with Alvaro Cumberbatch ("Cumberbatch"), Malik Woods ("Woods"), and Pierre Mitchell (*a.k.a.* "Lenny") ("Mitchell") as passengers.  (Ex. G (Defendant's Affidavit in Support of Motion to Set Aside Sentence Pursuant to N.Y. C.P.L. § 440.20 Motion, dated Oct. 15, 2007) ("Pet. § 440.20 Aff."), at 2.)  The four men planned to commit a robbery, agreeing that Petitioner would be the "getaway

---

[2] Exhibits attached to the Fleishmann Declaration are referred to herein by exhibit letter.

[3] To the extent possible, the facts summarized herein are based on Petitioner's plea allocution and submissions by Petitioner in various state court proceedings.

driver." (Ex. A (Transcript of Plea Allocution held Sept. 16, 2003) ("Plea Tr."), at 8.)[4]  At about

2:00 a.m., Petitioner pulled over on East 81st Street between York and First Avenues.  (Pet.

§ 440.20 Aff., at 2.)  Cumberbatch exited the car and robbed two women at gunpoint, taking two

purses, a coat, and a cell phone, while Petitioner and the two other men remained in the car.  (*Id*.)

Cumberbatch returned to the car, and Petitioner headed downtown on Park Avenue.  (*Id*.)  In an

effort to avoid a police car that began pursuit, Petitioner drove through a red light at about

65 miles per hour and crashed into another car that was traveling crosstown through a green light.

(Plea Tr., at 10-11.)  As a result of the accident, the driver of the other car, 68 year-old Nino

Garcia ("Garcia"), suffered severe injuries, which ended his career as an opera singer.  (Plea Tr.,

at 11; Ex. C (Brief for Defendant-Appellant) ("Pet. App. Br."), at 6.)

     According to Respondent, Petitioner and the other passengers in his car fled the scene of

the crash on foot.  (Ex. D (Brief for Respondent) ("Resp. App. Br."), at 3.)  Cumberbatch and

Mitchell were found and arrested shortly after the crash; Woods turned himself in later that day;

and Petitioner was arrested the following day, November 4, 2002, at his home in Queens.  (Pet.

App. Br., at 10 (quoting the pre-sentence report prepared by the New York Department of

Probation); Ex. J, at 3.)

     On December 17, 2002, Petitioner, Cumberbatch and Woods were indicted for two counts

of robbery in the first degree, one count of assault in the first degree, three counts of criminal

possession of a weapon in the second degree, and one count of criminal possession of a weapon

in the third degree; Petitioner was additionally charged with one count of assault in the second

---

[4] Citations to the transcript of the plea allocution are based on the hand-written numbers appearing in the bottom right corners of the copy attached as Exhibit A to the Fleishmann Declaration.

degree and one count of leaving the scene of an incident.  (Resp. App. Br., at 3-4.)  Cumberbatch, a first-time felony offender, pleaded guilty to first-degree robbery and agreed to a nine-year sentence.  (Pet. § 440.20 Aff., at 2-3.)  After he failed to appear for his sentencing hearing, however, he was sentenced to 11 years.  (Ex. K (Defendant's Motion for Leave to Reargue), at 6.)  Woods, also a first-time felony offender, pleaded guilty to second-degree robbery and received a five-year sentence.  (Pet. § 440.20 Aff., at 2-3.)  Mitchell, though arrested, was never indicted in connection with the robbery.  (Ex. B (Transcript of Sentencing Proceedings held Nov. 5, 2003) ("Sentencing Tr."), at 3; Pet. § 440.20 Aff., at 3.)

## PROCEDURAL HISTORY

### A.    Petitioner's Guilty Plea

On September 16, 2003, Petitioner appeared before the Honorable Michael Ambrecht for a *Huntley* hearing[5] and trial.  (Plea Tr., at 1.)  At the outset of the hearing, Petitioner's counsel requested, and was granted, a conference to discuss possible disposition.  (*Id.* at 1-2.)  Following an off-the-record conference, the court informed Petitioner that he had the choice to dispose of the case with a plea agreement or to proceed with the *Huntley* hearing and trial.  (*Id.* at 2.)  The court explained that sentences for at least four of the charges against Petitioner could be imposed to run consecutively, resulting in a minimum overall sentence of 20 years.  (*Id.* at 2-3.)  The court also noted that the maximum sentence for each of those charges was 25 years.  (*Id*. at 3.)  The court indicated, however, that if Petitioner pleaded guilty, it would sentence him to 12 years, so long as he reappeared for sentencing and did not commit any additional crimes between then and the time of sentence.  (*Id.* at 3-4, 12.)  The court told Petitioner, "I know that [12 years] probably

---

[5]  The purpose of a hearing held pursuant *People v. Huntley*, 15 N.Y.2d 72 (1965), is to determine whether any statements made by a defendant should be suppressed.

4

sounds like a long term to you, but I assure you, given the facts of this case and the advocacy of your counsel, we did not start out at 12 when we had our conference." (*Id.* at 3.)

After Petitioner consulted with his attorney and his wife, Petitioner's counsel conveyed Petitioner's desire to withdraw his previous plea of "not guilty" and to enter a plea of "guilty" to one count of robbery in the first degree and one count of assault in the second degree, in full satisfaction of the indictment. (*Id.* at 4.) Petitioner was then placed under oath. (*Id.* at 5-8.) Petitioner confirmed that he had discussed the case and his plea with his attorney and that he was satisfied with the representation he had been given. (*Id.* at 5-6.) Petitioner also confirmed that he understood that he was giving up his rights to trial by jury, to remain silent and not incriminate himself, to have his lawyer cross-examine witnesses and test the People's case, and to seek to suppress any statements he might already have made. (*Id.* at 6-7.)

The prosecutor noted that there was no written waiver of appeal, and asked that the waiver be made "on the record." (*Id.* at 7.) Petitioner acknowledged that he had discussed the waiver of his appeal rights with his attorney, that he understood the rights he was waiving, and that his waiver was voluntary and of his own free will. (*Id.*) The prosecutor then emphasized that all rights to appeal were being waived, "particularly and including any appeal based upon an excessive sentence claim." (*Id.* at 7.) Petitioner's counsel confirmed that those rights were "so waived," and Petitioner himself indicated that he understood. (*Id.* at 8.)

The court then requested that the prosecution allocute Petitioner as to the facts underlying the crimes at issue. (*Id.*) During the factual allocation, Petitioner admitted that, on November 3, 2002, at around 2:00 a.m., he acted as the getaway driver in a gunpoint robbery. (*Id.* at 9.) He further admitted that he was working with Woods, Cumberbatch and Mitchell. (*Id.*) Petitioner admitted that, while he waited in the car, Cumberbatch robbed two women at gunpoint

5

and took two purses, a coat and a cell phone from them.  (*Id.* at 9-10.)  Petitioner further admitted

that, following the robbery, he drove the getaway car down Park Avenue, in order to avoid the

police, and that he crashed into another car while speeding through a red light.  (*Id.* at 10.)  He

also confirmed that he was driving "recklessly" and that the crash caused serious injury to Garcia,

the driver of the other car.  (*Id.* at 11.)

The court found Petitioner's plea acceptable and informed him that, along with the

proposed 12-year sentence, there was a legal requirement for five years of post-release

supervision.  (*Id.* at 11.)  Petitioner confirmed that, other than the promises placed on the record,

no one had many him any other promises, that he had not been pressured or forced to plead

guilty, and that he was pleading guilty of his own free will.  (*Id.* at 13.)  Finally, Petitioner

confirmed that he was withdrawing his previous plea of "not guilty" and entering a plea of

"guilty" to one count of first-degree robbery and one count of second-degree assault.  (*Id.*

at 13-14.)

### B.    Sentencing Proceedings

Justice Ambrecht also presided over Petitioner's sentencing, which took place on

November 5, 2003.  (Sentencing Tr., at 1.)  Petitioner's counsel stated that, at the time of the plea

hearing, he and his client had felt that the promised sentence of 12 years was "a little harsh," but

indicated that the plea decision was made "considering what my client was facing, he felt he was

facing overwhelming evidence which would eventually lead to his conviction."  (*Id.* at 5.)

Petitioner's attorney then requested that the court honor the promised sentence.  (*Id.*)

Petitioner also addressed the court, stating that he was sorry for what happened and

suggesting that the court should take into account his family situation, including his newborn

child, and lack of a criminal past.  (*Id.*)  Petitioner then submitted a letter, which the court

6

interpreted as an application to withdraw his plea.  (*Id.* at 7.)  After hearing from Petitioner on his application, the court denied it.  (*Id.* at 7-8.)  The court noted that the letter did not make any specific allegation concerning coercion or innocence, and that, at the time of the plea allocution, Petitioner understood both what he was doing "and the benefit that he was going to derive" from the plea.  (*Id.* at 10-11).  The court also suggested that, considering the severity of Petitioner's actions, a 12-year sentence was "rather lenient." (*Id.* at 11-12.)

Before sentencing, the court heard from Petitioner one final time.  (*Id.* at 13.)  Petitioner stated that he felt "railroaded" because of the length of his sentence as compared to the sentences given to the others involved.  (*Id.*)  The court, however, proceeded to enter the previously negotiated 12-year sentence.  (*Id.* at 14.)  After sentence was imposed, Petitioner's counsel stated that he had "received a copy of [Petitioner's] right to appeal," but that "it's waived."  (*Id.* at 15.)

**C.     Direct Appeal**

In May 2006, Petitioner, through counsel, appealed his conviction to the New York Supreme Court, Appellate Division.  (*See* Pet. App. Br.)  Seeking a reduction of his sentence, Petitioner argued that, as he "ha[d] no prior convictions, ha[d] strong family ties and showed genuine remorse for his actions, the sentence of twelve years [was] excessive" under the Eighth Amendment of the United States Constitution and Article One, Section Five of the New York Constitution.  (*Id.* at 11.)  In opposition, Respondent argued that Petitioner's claim was barred by his waiver of his right to appeal and, in any event, without merit.  (*See* Resp. Br.)  On November 14, 2006, the Appellate Division unanimously affirmed Petitioner's conviction, without opinion.  *People v. Ross*, 34 A.D.3d 295 (1st Dep't 2006).  Petitioner then sought leave to

appeal to the New York Court of Appeals,[6] but leave to appeal was denied on February 6, 2007. *People v. Ross*, 8 N.Y.3d 884 (2007).

### D. Petitioner's Motion to Set Aside the Sentence Pursuant to N.Y.C.P.L. § 440.20

On October 15, 2007, Petitioner moved *pro se* before the trial court to set aside his sentence pursuant to Section 440.20 of the New York Criminal Procedure Law. (*See* Ex. G.) Petitioner argued, *inter alia*, that his sentence was excessive (1) in light of his sentence as compared to that of his co-defendants and the others involved in the incident, and (2) as he had no prior record, was gainfully employed, and posed no danger to society. (*See id*. at "Memorandum of Law," at 6-17.)

On December 4, 2008, the state court denied Petitioner's claims on the merits. (*See* Ex. J.) In relevant part, the court found that Petitioner's sentence could not be considered excessive because Petitioner's 12-year determinate sentence was within the statutory framework, which allowed for a determinate term of any period from 5 to 25 years. (*Id*. at 5-6 (citing N.Y. Penal Law §§ 70.02, 70.06(6)(a), 70.04(3)(a)).) Further, the court held that Petitioner's sentence was not "grossly disproportionate" to his crime such that his sentence rose to the level of "cruel and unusual," considering the gravity of the offense, the character of the offender, and the danger the offender posed to society. (*Id*. at 9 (citing *People v. Broadie*, 37 N.Y.2d 100 (1975), *cert. denied*, 423 U.S. 950 (1975)).) The court rejected Petitioner's comparisons to the treatment of Cumberbatch, Woods and Mitchell. (*Id*.) The court held that the dismissal as to Mitchell did not provide grounds for finding Petitioner's sentence cruel and unusual, as Mitchell was never

---

[6] Although a copy of Petitioner's application for leave to appeal has not been provided to this Court, the Court assumes – and Respondent does not suggest otherwise – that Petitioner raised the same claim to the Court of Appeals as he raised in his brief to the Appellate Division.

indicted.  (*Id*.)  The court also explained that there was "certainly adequate basis for the view that [Petitioner] and Cumberbatch, as claimed by the People, were the two main participants in the robbery," in light of Petitioner's role as the driver.  (*Id*.)  The court found that Petitioner's sentence was not grossly disproportionate to Cumberbatch's sentence (which was only one year shorter), particularly as Petitioner was solely responsible for Garcia's severe injuries.  (*Id.*)  Finally, the court found that any evidence of Petitioner's strong character was not sufficient to render his sentence excessive light of "his commission of two very serious crimes and life altering injuries to one of his victims."  (*Id.* at 10.)

On March 14, 2008, Petitioner filed a Notice of Motion for Leave to Reargue/Renew, arguing that, in denying his Section 440.20 motion, the court:  (1) should have considered the dismissal of the case against Mitchell; (2) should have considered for the fact that Cumberbatch was promised a sentence of only nine years, which was then raised to 11 years after Cumberbatch failed to appear for sentencing, and (3) should not have considered the car collision that caused Garcia's injuries.  (*See* Ex. K.)  On that same day, Petitioner filed leave to appeal to the Appellate Division, setting forth essentially the same arguments that he made in his motion for leave to reargue, but failing to raise any other claims that he had made in his original motion.  (*See* Ex. M.)

On July 2, 2008, the court granted Petitioner's motion to reargue but adhered to its original decision.  (*See* Ex. L.)  The court rejected all of Petitioner's claims and emphasized that Petitioner's role in causing Garcia's injuries augmented his culpability and warranted a sentence of three years above the nine-year term Cumberbatch was originally promised or one year above the 11-year term Cumberbatch ultimately received.  (*Id.* at 3.)  On July 15, 2008, the Appellate

Division denied leave to appeal the December 4, 2008 decision.  (*See* Ex. O.)  It does not appear

that Petitioner sought leave to appeal the July 2, 2008 decision.

  **E.**  **Petitioner's Motion to Vacate and/or Reduce Conviction**
     **for First-Degree Robbery Pursuant to N.Y.C.P.L. § 440.10**

   On or about September 1, 2008, Petitioner filed a *pro se* motion in the trial court, pursuant

to Section 440.10, to vacate his judgment of conviction of robbery in the first degree.  (*See* Ex. P.)

In that motion, Petitioner argued that his plea of "guilty" to that charge had not been "knowingly,

voluntarily, []or intelligently made" because the court had failed (1) to ask him whether he

wished to waive the "unloaded firearm affirmative defense," or (2) to inquire as to whether the

gun used during the robbery was loaded and operable.  (*Id.* at 3.)  In the alternative to requesting

that this conviction be vacated, Petitioner argued that it should be reduced to second-degree

robbery because the firearm used in the incident was not real.  (*Id.*)  On October 15, 2008,

Respondent opposed, arguing that there is no requirement for a defendant to be notified of "every

conceivable affirmative defense before a court can accept a guilty plea," and, in any event, as

ballistic reports for all of the guns used in the robbery had clearly shown that the guns were both

loaded and operable, no plausible affirmative defense had been available to Petitioner.  (*See*

Ex. Q, at ¶ 5.)

   On November 20, 2008, the court denied Petitioner's motion, finding "that [Petitioner's]

claims [were] without merit."  (*See* Ex. S.)  The court initially noted that on a plea allocution, the

judge's duty of further inquiry arises only where the defendant makes a statement that casts doubt

on the defendant's guilt or the voluntariness of the plea, or when the defendant raises a defense to

the charge against him.  (*Id.* at 2-3 (citing *People v. Lopez*, 71 N.Y.2d 662, 666 (1988); *People v.*

*Pariante* 726 N.Y.S.2d 405 (1st Dep't 2001); *People v. Mosher*, 636 N.Y.S.2d 246

(5th Dep't 1998)).)  The court then found that "[t]he minutes demonstrate[d] that the plea court had no duty to advise defendant of the affirmative defense or to make further inquiry since nothing was said during the course of the plea proceeding that raised any issue that the gun displayed during the robbery was not loaded or operable or that cast doubt on [Petitioner's] guilt or the voluntariness of the plea." (*Id.* at 3.)  The court explained that, in light of Petitioner's admissions and the ballistics reports showing that all guns recovered immediately after the robbery were operable, which had been produced to the defense prior to the plea allocation, "the plea court would certainly have [had] no reason to inquire about the existence of the affirmative defense." (*Id.* at 4.)  Petitioner sought leave to appeal to the Appellate Division (Ex. T), but leave was denied on February 5, 2009 (Ex. V).

## F.   The Habeas Petition

Petitioner filed his federal habeas petition on February 27, 2009. (*See* Pet.)[7]  On June 23, 2009, the Honorable Loretta A. Preska directed Petitioner to file an amended petition within 60 days providing additional information. (Order, dated June 23, 2009 (Dkt. 3).) Petitioner then filed an Amended Petition, dated August 14, 2009. (*See* Am. Pet.)  On April 19, 2010, Respondent opposed the Amended Petition by filing a memorandum of law and a declaration, together with exhibits and the transcripts from Petitioner's plea allocation and sentencing hearings.

---

[7] Although the Court's docket reflects a filing date of June 23, 2009 (*see* Dkt. 2), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and, in the absence of evidence to the contrary, this Court will deem the petition to have been filed on February 27, 2009, the date upon which Petitioner apparently signed it.  *See, e.g., Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

Petitioner filed an application to Appoint Counsel pursuant to 18 U.S.C. § 3006(A)(g) on

September 15, 2009 (Application for the Court To Request Counsel Pursuant to

18 U.S.C. § 3006A(g), dated Sept. 15, 2009) (Dkt. 7)); the Court denied that application on

August 3, 2010 (Memorandum and Order, dated Aug. 3, 2010 (Dkt. 14)).  Although the Court

informed Petitioner that he should serve and file reply papers no later than May 17, 2010 (Order,

dated April 12, 2010 (Mem. Endors.) (Dkt. 11)), he did not do so, nor has the Court received any

further submissions from him.

## DISCUSSION

I.    **APPLICABLE LEGAL STANDARDS**

   A.    **Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition

must be filed within a one-year limitations period beginning on the latest of four dates, usually

"the date on which the judgment became final by the conclusion of direct review or the expiration

of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v.*

*Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes "final" for

purposes of Section 2244 upon "the completion of direct appellate review in the state court

system and either the completion of certiorari proceedings in the United States Supreme Court, or

12

– if the prisoner elects not to file a petition for certiorari – [the expiration of] time to seek direct review via certiorari").[8]

In this case, Petitioner's claims are timely because, not counting the time when his properly filed post-conviction proceedings were pending, *see* 28 U.S.C. § 2244(d)(2) (2000), his Petition was filed within one year of the date his conviction became final for purposes of habeas review, *see id.* at § 2244(d)(2)(A); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (noting that one-year statute of limitations is tolled during a pending state post-conviction proceeding or other collateral review).

**B.    Exhaustion**

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged violations of . . . [the] prisoners' federal rights." *Picard*, 404 U.S. at 275 (citation omitted).  The state courts must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997)

---

[8] The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

(quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)) (alteration in original).

Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing *Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990)), *cert. denied*, 514 U.S. 1054 (1995).

### C.     Standard of Review

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

14

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Williams*, 529 U.S. 362, 405-06 (2000).[9] An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409). In other words, the state court's ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

Where this Court reaches the merits of a claim that has not been decided by the state court on substantive grounds, the pre-AEDPA *de novo* standard of review applies. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

---

[9] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 107 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Rodriguez*, 537 F.3d at 106-07 (citing *Musladin*).

## II.   PETITIONER'S CLAIMS

### A.   Excessive Sentence Claims

Petitioner raises two excessive sentence claims:  first, that his sentence violated the Eight Amendment in light of certain mitigating factors; and second, that his sentence violated the Eight Amendment and the equal protection clause of the 14th Amendment, when compared to the treatment of the other participants in the robbery.[10]  As an initial matter, there are questions as to whether these claims are procedurally barred.  This Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)).  "This rule applies whether the state law ground is substantive or procedural." *Id.*[11]  A claim may also be procedurally barred from federal habeas review if it is unexhausted, but "deemed" exhausted because, under the state's procedural rules, the petitioner no longer has recourse to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).  When a claim is deemed exhausted because of such a

---

[10] In his Amended Petition, Petitioner lists three excessive sentence claims (*see* Am. Pet. at 5), but his third claim, as phrased, essentially reiterates the substance of his first two claims, and thus will not be separately addressed here.

[11] To determine whether the state law ground on which the state court rested was "truly an *independent* basis for [the] decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (internal quotation marks and citation omitted).  To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), and that has not been "misapplied in [the petitioner's] case in particular."  *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citations omitted).

procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted). A habeas petitioner can overcome a procedural bar only if he can demonstrate "cause and prejudice for the default," *Gray*, 518 U.S. at 162 (citations omitted), or that "failure to consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750 (internal quotations omitted).

Petitioner's first excessive sentence claim (that mitigating factors should have resulted in a more lenient sentence) arguably was rejected by the Appellate Division on state law grounds when, on direct appeal, the court affirmed Petitioner's conviction without opinion. In *Quirama v. Michele*, 983 F.2d 12 (2d Cir.1993), the Second Circuit found that an Appellate Division's decision rested on state law where, although the opinion merely affirmed the conviction without further explanation, the prosecution had argued that the claims raised on direct appeal were unpreserved, and where the New York appellate courts permitted review of such claims only sparingly. *Id.* at 13. Here, as set forth above (*see supra* at 7-8), the prosecution argued to the Appellate Division that Petitioner had waived the excessive sentence claim he was raising on direct appeal, and that, in any event, the claim was without merit. Indeed, the record is clear that, as Respondent argued to the appellate court, Petitioner expressly waived his right to appeal as a condition of his plea agreement: Petitioner confirmed that he had discussed the waiver of the right to appeal with his attorney, and that he understood the rights he was waiving, including, in particular, the right to challenge the length of his sentence. (*See* Plea Tr., at 7-8; N.Y. Crim. Proc. § 450.10(1)(a) (knowing and voluntary waiver of the right to appeal precludes appellate review of whether a sentence was harsh and excessive).) Under the circumstances, as in

17

*Quirama*, the Appellate Division's summary affirmance of Petitioner's conviction could be understood to rest on an independent and adequate state-law ground (*i.e.*, the ground that Petitioner had waived his right to appeal). *See McClane v. Superintendent*, No. 05 Civ. 5833, 2007 WL 295599, at *3 (E.D.N.Y. Jan. 24, 2007) (noting that petitioner's claims were procedurally barred based upon independent and adequate state law grounds given that defendant's waiver of his right to appeal foreclosed appellate review of his sentence as harsh and excessive).

Petitioner's second excessive sentence claim (that his sentence was unduly harsh, as compared to the sentences received by his co-defendants), which Petitioner raised in his Section 440.20 motion, is arguably unexhausted. This claim was initially denied on the merits by the New York Supreme Court. (Ex. J.) The court subsequently granted reargument but adhered to its prior ruling denying the claim. (Ex. L.) As set forth above, Petitioner sought leave to appeal the initial order (Ex. M), but not the final order. It is not clear whether, to exhaust this claim, Petitioner was required to seek leave to appeal the court's final decision. If unexhausted, the Court would deem the claim exhausted, as Petitioner would no longer be able to seek relief in the New York state courts. *See Castille*, 489 U.S. at 351. This, then, would result in Petitioner's claim being procedurally barred.

The Court, however, need not decide whether these claims are procedurally barred, and, if so, whether Petitioner would be able to overcome the bar, as, in any event, the claims are either not cognizable in this court or are plainly without merit. Indeed, to the extent this Court should reach the merits of these claims, they would fail even on *de novo* review; certainly, they would fail if the state court's holdings were accorded deference under AEDPA.

1.    **Mitigating Factors**

Petitioner's claim that the sentencing court violated the Eighth Amendment in light of certain mitigating factors (*e.g.*, strong family ties, genuine remorse, lack of criminal history), is not cognizable on habeas review.  In order to state a cognizable Eighth Amendment claim, a petitioner must generally allege that the statute under which he was sentenced is itself unconstitutional.  *See United States v. Dawson*, 400 F.2d 194, 200 (2d Cir. 1968) ("when a statute provides for punishment thought to be violative of the [Eighth] [A]mendment the constitutionality of the statute itself must be attacked") (citations omitted).  In this case, Petitioner has made no such attack on the validity of the relevant statute.

In the absence of a challenge to the relevant statute itself, an excessive sentence claim may only be maintained if the sentence imposed fails to comply with state law.  *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citation omitted).  Here, Petitioner was convicted of Robbery in the First Degree, pursuant to Penal Law § 160.15(4), and Assault in the Second Degree, pursuant to Penal Law §120.05(4).  By these statutes' terms, these are Class B and Class D felonies, respectively, carrying maximum sentences, in turn, of five-to-25 years, and two-to-seven years.  *See* N.Y. Penal Law §§ 70.02(3)(a), 70.02(3)(b).  Petitioner's sentence of 12 years thus fell well within the aggregate range permitted by state law, and, accordingly, no Eighth Amendment issue is implicated by that sentence.

Moreover, in determining the sentence to impose on Petitioner, the state court carefully considered a number of factors, including, *inter alia,* the injuries caused by Petitioner's actions, the voluntariness of Petitioner's plea, Petitioner's age and criminal record, and a letter written by Petitioner, which the court interpreted as motion to withdraw his plea.  (Sentencing Tr., at 7-12.)

19

The court then concluded that the negotiated sentence was appropriate and decided to abide by it. (*Id.* at 14.)  On this record, Petitioner wholly fails to demonstrate that his sentence violated the Eight Amendment.

### 2.     Comparison to Sentences of Co-Defendants

Petitioner's claim that the sentencing court violated the Eighth Amendment and the Equal Protection Clause of the 14th Amendment by treating him differently than similarly-situated accomplices is equally unavailing.  "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois,* 399 U.S. 235, 243 (1970).  Thus, "[a]bsent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants." *U.S. v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995).

In this case, although Mitchell was involved in the incident, he was never charged with a crime, apparently because the State had doubts with respect to his guilt or had insufficient evidence to prove his guilt.  (*See* Ex. L, at 2-3 (noting explanation provided by the State).)  As the New York Supreme Court aptly explained, "the basis for the dismissal against [Mitchell] is inapplicable to [Petitioner] against whom the People obtained an indictment and were ready to proceed to trial." (*Id.*, at 3.)  Moreover, while Cumberbatch and Woods were given more lenient sentences than Petitioner in connection with their guilty pleas, it was perfectly reasonable for the trial court to have found them less culpable than Petitioner with respect to the totality of the charged crimes, as Petitioner, the driver of the getaway care, was solely responsible for the life-altering injuries suffered by Garcia.  Accordingly, Petitioner and his accomplices were not

20

similarly situated for purposes of sentencing, and Petitioner has no basis to argue that the sentencing court acted arbitrarily in imposing different prison terms.

For these reasons, I recommend that Petitioner's excessive sentence claims be dismissed.

**B.**     **Challenges to Conviction for Robbery in the First Degree**

Petitioner also challenges his conviction for first-degree robbery.  Under New York Penal Law, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime. . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  N.Y. Penal Law § 160.15(4).  The use of an unloaded or inoperable gun is an affirmative defense, N.Y. Penal Law § 160.15(4), reducing the offense from first-degree robbery to second-degree robbery.  In the Amended Petition, Petitioner claims (1) that his guilty plea to first-degree robbery was not knowing and voluntary because, prior to accepting his plea, the state court failed to notify him that possession of an unloaded or inoperable handgun could be a defense to first-degree robbery, or to inquire as to whether the gun used during the robbery was loaded and operable and (2) that, in any event, his conviction for first-degree robbery should have been reduced to second-degree robbery, as the gun used during the robbery was "fake."  (Am. Pet., at 6.)

Petitioner raised these claims in his Section 440.10 motion.  (Ex. P.)  The New York Supreme Court rejected the claims on the merits (Ex. S), and Petitioner exhausted the claims by seeking leave to appeal to the Appellate Division (Ex. T).  Thus, these claims are now subject to review under AEDPA.  *See* 28 U.S.C. § 2254(d).

1.     **Validity of Petitioner's Guilty Plea**

Under clearly established Supreme Court law, a guilty plea must be both knowing and voluntary in order to be valid.  *Parke v. Raley*, 506 U.S. 20, 28-29 (1992) ("'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  In determining whether a particular guilty plea was made intelligently, a court must assess whether the defendant "was advised by competent counsel [and] . . . made aware of the nature of the charge against [him or her]," and was "fully aware of the direct consequences" of the plea.  *Brady v. United States*, 397 U.S. 742, 755 (1970).  Further, the court must ensure that the defendant was not incompetent at the time of the plea, or "otherwise not in control of [his or her] mental faculties."  *Id.* at 756.

Due process, however, does not require that the state court inform a defendant of every available defense prior to accepting a plea.  *See Ames v. New York State Div. of Parole*, 772 F.2d 13, 15 (2d Cir. 1985) ("Due process. . . does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed[,] particularly where the burden of persuasion with respect to the appropriate defense rests on the defendant.") (internal quotation omitted).  Nor does due process "mandate a factual basis inquiry by state courts."  *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) (finding plea was knowing and voluntary, under circumstance surrounding the plea, despite lack of factual basis inquiry); *see also Tate v. Wood*, 963 F.2d 20, 23 (2d Cir. 1992) ("When a defendant fails to bring any matter to the trial court's attention, such as a denial of guilt, that would suggest the need for a factual inquiry, one is not required.").  Rather, in determining whether a guilty plea

22

was made knowingly and voluntarily, a court must consider "all of the relevant circumstances surrounding" the plea. *Brady*, 397 U.S. at 755.

In *Ames v. New York State Division of Parole*, a habeas petitioner challenged the validity of a guilty plea made in New York state court to first-degree robbery, arguing that he had not been made aware of the "fake pistol" affirmative defense. 772 F.2d at 14. The Second Circuit rejected the claim, finding that, even if the petitioner had not been not informed of the defense, "[b]y admitting that he committed each of the robberies with what appeared to be a pistol, [the petitioner] established the factual predicate for his conviction of robbery in the first degree," which "satisfied the requirement that [the petitioner's] plea be knowing and voluntary." *Id.* at 15-16.

Here, as in *Ames*, an inquiry was made during Petitioner's plea allocution as to the factual basis for the plea, and that inquiry established the requisite factual predicate for first-degree robbery. As explained in greater detail above, Petitioner admitted that he had agreed, with Cumberbatch and two other individuals, to be the "getaway driver" in a robbery; that he knew that people involved in the robbery, including himself, were armed with guns; and that, as he waited in the car, Cumberbatch committed "a gunpoint robbery," taking property from two women. (*See supra* at 5-6.) As the state court found, in denying Petitioner's Section 440.10 motion, at no point during Petitioner's plea did Petitioner say anything that gave rise to "any issue that the gun displayed during the robbery was not loaded or operable or that cast doubt on [Petitioner's] guilt or the voluntariness of his plea." (Ex. S, at 3 (citing *People v. Townsend,* 683 N.Y.S.2d 253 (1st Dep't 1999); *People v. Caraballo*, 617 N.Y.S.2d 300 (1st Dep't 1994).) Thus, the court had no obligation to inquire further before accepting Petitioner's guilty plea.

23

Moreover, at the plea hearing, Petitioner confirmed that he had spoken with his attorney about the case and about pleading guilty, that he was satisfied with the services of his attorney, that his decision to plead guilty was made voluntarily and of his own free will, and that no one had "pressured" or "forced" him in any way to plead guilty.  (*See supra* at 5-6.)  There is also no indication in the record that, at the time of his plea, Petitioner was mentally incompetent or otherwise lacked the mental capacity required to enter into a guilty plea.  Based on the totality of the record, the state court's finding that Petitioner's guilty plea to first-degree robbery was knowing and voluntary was appropriate, and, certainly, it was neither contrary to, nor an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d).

### 2.     Reduction to Second-Degree Robbery Because Gun Was Allegedly "Fake"

Finally, Petitioner claims that his conviction for robbery in the first degree should have been reduced to robbery in the second degree because the gun used in the robbery was fake.  Yet, not only was Petitioner convicted upon a plea that, as discussed above, was knowing and voluntary, but Petitioner has failed to present any evidence whatsoever, much less clear and convincing evidence, to rebut the state court's presumptively correct finding that ballistic reports for all of the guns used in the robbery showed the guns to have been both loaded and operable. (Ex. S, at 4; *see also* 28 U.S.C. § 2254(e).)  On the record presented, this Court thus would have no basis for disturbing Petitioner's conviction for first-degree robbery, and, accordingly, I recommend that his claims challenging that conviction be dismissed.

### CONCLUSION

For all of the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed in its entirety.  Further, I recommend that the Court decline to issue a

certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not

"made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

parties shall have fourteen (14) days from service of this Report to file written objections. *See*

*also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the

Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel,

United States Courthouse, 500 Pearl Street, Room 2260, New York, New York 10007, and to the

chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York,

New York 10007. Any requests for an extension of time for filing objections must be directed to

Judge Castel. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A

WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v.*

*Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d

Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*,

838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If

Petitioner does not have access to cases cited herein that are reported on Westlaw, he may request

copies from Respondents' counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir. 2009) (noting

that the Court may ask opposing counsel to provide, to a *pro se* litigant, copies of decisions that

are available only electronically).

Dated: New York, New York
       May 3, 2011

                                        Respectfully submitted,


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

                    25

Copies to:

Hon. P. Kevin Castel, U.S.D.J.

Mr. Stephan Ross
03-A-6087
Eastern Correctional Facility
P.O. Box 338
Napanoch, NY 12458

Mr. Stephan Ross
03-A-6087
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788

Lisa Fleischmann, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271-0332